

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

AZTEC ENERGY PARTNERS, INC.,

Plaintiff,

v.   CIVIL NO. 1-8-cv-02379 (VMK)

SENSOR SWITCH, INC.,

Defendant.

**FILED**
May 5 2008
MAY 0 5 2008  YM

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**Case Presently Pending:**

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

AZTEC ENERGY PARTNERS, INC.,

Plaintiff,

v.   CIVIL NO. 3:07 CV 775 (AHN)

SENSOR SWITCH, INC.,

Defendant.

### MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION FOR PROTECTIVE ORDER

Dennis Brown and Plaintiff Aztec Energy Partners, Inc. submit this Memorandum of Law in Further Support of the Motion for Protective Order. On April 24, 2008, Mr. Brown and Plaintiff sought an order of this Court that a deposition of Dennis Brown scheduled for April 29, 2008 in Chicago not be had on that day in that location. Since that date has passed, the remaining issues is location—whether Mr. Brown can be deposed in Chicago.

Defendant's response is as misleading as is it is incorrect and warrants some reply. Defendant wrongly conveys the impression that the parties were ordered by the Court in Connecticut to hold the deposition within 100 geographic miles of Mr. Brown's home.[1] The actual holding of the Court's order was that Mr. Brown would not be compelled to attend a deposition in Connecticut, and the parties were ordered to amicably work out Mr. Brown's deposition.[2] Knowing that Mr. Brown would be in Atlanta, Georgia, on business, Plaintiff offered to make him available for deposition in Atlanta.[3] Rather than entertain that offer, which meant that Plaintiff and its counsel would not have to travel, Defendant noticed a deposition in Chicago, Illinois—a location that maintains no connection to the controversy, the parties, or the deponent. This is particularly true given that Defendant was informed that Mr. Brown would be in Atlanta, Georgia, for business on April 29, 2008—the very day Defendant noticed the deposition in Chicago.

Even through its sanguine rhetoric, Defendant's obstreperousness is evident. When Plaintiff initially indicated that it planned to file suit in Georgia, Defendant promised a jurisdictional fight; Plaintiff avoided that fight by suing in Connecticut, Defendant's home

---

[1] Of course, the Court could not have ordered something inconsistent with the rules, and it did not. Furthermore, the Court clearly did not foreclose the possibility that Plaintiff would make Mr. Brown available somewhere other than Granger, Indiana, and the Court was hardly encouraging the Defendant to choose a location at the limits set by the rule.

[2] This, of course, is the irony of Defendant's criticism that Plaintiff "insisted" the deposition not be held in Connecticut and Defendant's statement that it "suggested that the deposition be held in Connecticut." Brief at 6. As a matter of fact, Defendant *noticed* Mr. Brown's deposition for Connecticut; contested Plaintiff's motion for protective order; and *lost* that objection because the Court would not compel Mr. Brown, a non-party, to travel to Connecticut. Unremarkably, it follows that Plaintiff can *insist* that Mr. Brown be deposed away from Connecticut: such insistence is backed by a protective order from the Court in Connecticut.

[3] Because Plaintiff is located in the Atlanta area, Mr. Brown frequently travels to Atlanta.

2

jurisdiction. The choice of Connecticut forum was therefore one of pragmatics, not initial inclination. Defendant's claim that "Aztec voluntarily chose to file suit in Connecticut . . ." is baseless. *See* Brief at 2.

Defendant's "offer" to bring a California employee[4] to Connecticut is hardly the concession that it seems. Defendant did, however, insist that all five other depositions in this case, including the California employee, its officers, and *Plaintiff's officers*, be scheduled over two different weeks in Connecticut, forcing Plaintiff to travel to Connecticut and Plaintiff's counsel to bear the burden of traveling twice to Connecticut for depositions.[5]

These facts merely provide background for the three legal issues before this Court: (1) the subpoena was invalid when served; (2) the federal rules will not compel a witness to travel more than 100 miles to be deposed; and (3) conducting the deposition in Chicago will cause

---

[4] In fact, Plaintiff offered to travel to California to depose Mr. Lancos; however, Defendant's counsel did not wish to travel to California and instead brought Mr. Lancos to the east coast. Rather than fitting in a narrative of cooperation, this fact merely shows that defense counsel have consistently acted to unnecessarily cause events to occur in Connecticut when there was no reason that they should. The fact is that Defendant was happy providing its employee at its home office; this is the very offer that Defendant rejects out of hand when Plaintiff offered to provide Mr. Brown for deposition in Atlanta.

[5] While Defendant makes much of its decision to bring its California employee to Connecticut and to pay for that employee's airfare (Brief at 7), Plaintiff never sought to have Defendant pay for Mr. Brown to travel to Atlanta to be deposed. While Defendant correctly notes that convenience of counsel does not "weigh much," it can break ties when the convenience of the witness is not at issue. Said another way, it is ironic that Defendant *now* is concerned about the convenience to the deponent—that is, after it forced Plaintiff's officers to travel to Connecticut. Plaintiff does not seek to revisit the decision of the Connecticut court but merely points out that Defendant's concern for the convenience of witnesses is a fickle concern at best. Moreover, Defendant's counsel showed a marked lack of concern for the deponent when it subpoenaed him to a city over 100 miles from his home on a day he was already scheduled to be in Atlanta. Finally, Defendant's emphasis on "convenience of counsel" masks the fact that requiring counsel to travel unnecessarily adds unreasonably to the parties' discovery burden and expense.

Plaintiff undue burden and expense. The only fair and lawful outcome is to grant this motion for a protective order.

A. The Subpoena Was Invalid When Served.

"Failure to tender the appropriate sums *at the time the subpoena is served* invalidates the subpoena." Wright & Miller, *Federal Practice and Procedure* § 2454, at 402–03 (3d ed. 2004) (emphasis added) (collecting cases). While Defendant may wish to avoid a discussion on the merits of the service of its invalid subpoena, its decision to *mail* a supplement to the witness fee fails to sustain its burden on two levels. First, the subpoena is invalid because the appropriate sum was not tendered when the purported subpoena was served. *See CF & I Steel Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 713 F.2d 494, 496 (9th Cir. 1983) ("[W]e hold the plain meaning of Rule 45(c) requires simultaneous tendering of witness fees and the reasonably estimated mileage allowed by law with service of a subpoena."). Second, personal service of a subpoena is required, so merely *mailing* a supplement is ineffective to remedy the violation of the rule. *See* Wright & Miller, *Federal Practice and Procedure* § 2454, at 397–98 ("The use of the word 'delivering' in [Rule 45(b)(1)] with reference to the person to be served has been construed literally."). In recognition of this rule, Mr. Brown was personally served on the initial service, but Defendant failed in its service obligations when it belatedly mailed a necessary part of the subpoena to Mr. Brown. For these reasons, the subpoena was invalid at the time of service.

B. The Federal Rules Require a Court to Quash a Subpoena that Seeks To Compel a Deponent To Travel More Than 100 Miles.

Defendant mangles Rule 45 by confusing the issue of the validity of service with compulsion to travel. While it may be true that *service* of a subpoena may be proper anywhere in the district or within 100 miles of the place specified for deposition—*see* Fed. R. Civ. P. 45(b)(2)(A), (B)—the rule expressly changes the inquiry when a Court is asked to quash a

4

subpoena to one concerned with the distance a witness is asked to travel—*see* Fed. R. Civ. P. 45(c)(3)(A)(ii). *See In re Edelman*, 295 F.3d 171, 178 (2d Cir. 2002) ("[U]nless a person is a party to the litigation or an officer of a party, he cannot be compelled to travel more than 100 miles from where he resides or works to be deposed.").[6] The difference between service and compelling travel has been fully embraced by the Northern District of Illinois. *See, e.g., Jamsports & Entm't, LLC v. Paradama Prods., Inc.*, 2005 WL 14917 (N.D. Ill. Jan 3, 2005).[7]

As described in *Jamsports*, a subpoena may be served anywhere in the district, but a court *must* quash any subpoena that attempts to make a witness travel more than 100 miles except for trial. *Compare id.* at *1; *with* Fed. R. Civ. P. 45(c)(3)(A)(ii). On Defendant's reading of the rule a deponent in Saugatuck, Michigan (a suburb of Grand Rapids, Michigan)[8] could be compelled to travel the 141 miles and to cross two state lines and a time zone to attend a deposition in Chicago on the authority of an attorney. Defendant's construction impermissibly

---

[6] In fact, the reason that Mr. Brown was not compelled to travel to Connecticut was because the Court found he was not a party and therefore was subject to the witness-subpoena rules. That determination is res judicata.

[7] Defendant's "controlling precedent" is anything but. The court in *McGill* trivially observed that neither the 100-mile rule nor the court's "inherent powers" could compel attendance of a witness in California to a trial in the Northern District of Indiana, and in fact the plaintiff did not even try to issue a subpoena in that case. 944 F.2d at 354. Likewise, the courts in *Morris* and *Giguere* declined to transfer a case from the Northern District of Illinois to the Northern District of Indiana because all witnesses were within the Illinois court's subpoena power. *See* 1993 WL 217246, at *6; 1988 U.S. Dist. Lexis 17157, at *7. In fact, the only case to address the "car versus crow" issue presented by this case is the wrongly decided case from the District of Connecticut, which is clearly inconsistent with *Jamsports*. *See SCM Corp. v. Xerox Corp.*, 76 F.R.D. 214, 215 (D. Conn. Sept. 21, 1977) (acknowledging that its interpretation "*expands* the reach of civil trial subpoenas"(emphasis added)). Furthermore, the tension addressed in *SCM* was ameliorated by the 1991 amendments to the rules, which provided an exception for compelling witnesses to travel more than 100 miles for trial as long as service was otherwise valid. *See* Advisory Notes to 1991 Amendments, Subdivision (c).

[8] Saugatuck, Michigan is 95 miles from Chicago as the crow flies but 141 miles by car. *See* Google Map and Distance Calculator, attached as Exhibit A hereto.

5

reads the word "travel" out of the rule. Said another way, Defendant offers no argument that there is a reasonable method of transportation that would permit Mr. Brown to travel less than 100 miles to reach the wrongfully noticed deposition.

Defendant does not contest the fact that Mr. Brown would be compelled to travel more than 100 miles in order to comply with the subpoena. Because Mr. Brown must travel more than 100 miles to the location noticed for deposition, the subpoena must be quashed pursuant to Federal Rule of Civil Procedure 45(c)(3)(A)(ii).

C. <u>Plaintiff Would Bear and Unreasonable Burden by Being Forced To Attend a Deposition in Chicago.</u>

Chicago is not a forum suited for the convenience of the parties and witnesses. No parties and no witnesses are there. Defendant seeks to have Plaintiff pay the added expense of traveling to Chicago for this deposition rather than where it is convenient for the witnesses and parties.

Defendant's apparent tactic is simply to increase the burden on Plaintiff in connection with this deposition wherever possible. There is no other explanation for selecting Chicago, rather than Atlanta, for the deposition, after the failed attempt to require it to be conducted in Connecticut. At a Chicago deposition, Plaintiff has to send counsel and potentially a client representative to a far-flung location, consuming significant time and expense. In Atlanta, Mr. Brown would have been made available, and because he regularly travels to Atlanta for business, no additional expense would inure to the Plaintiff.

Nor is there an additional hardship created for the Defendant. The Court in Connecticut has already ruled that Defendant cannot compel Mr. Brown's deposition in Connecticut. Accordingly, Defendant will have to travel for this deposition regardless of where it is taken. As stated in the initial brief the distance counsel from Connecticut would have to trial is only an

additional 100 miles to attend a deposition in Atlanta over Chicago. Any additional expenses to Defendant is negligible, particularly compared to the additional expense Plaintiff will incur if Plaintiff is required to travel to Chicago for this deposition.

D. Conclusion

The subpoena is invalid because it was not served with the appropriate witness and travel fee. The subpoena should be quashed for that reason alone and also because it purports to require Mr. Brown to travel more than 100 miles. Finally, conducting the deposition in Chicago, rather than Atlanta, would add substantially and unnecessarily to Plaintiff's burden and expense, without a corresponding benefit to Defendant. Mr. Brown and the Plaintiff request that this Court grant the Motion for Protective Order.

This 2d day of May, 2008.

Respectfully submitted,

David C. Newman
Georgia Bar Number 541148
Mark A. Rogers
Georgia Bar Number 142487
Rachel King Powell
Georgia Bar Number 421311

SMITH, GAMBRELL & RUSSELL, LLP
Suite 3100, Promenade II
1230 Peachtree Street, N.E.
Atlanta, Georgia 30309-3592
(404) 815-3500

Attorneys for Plaintiff

7

A

Case 1:08-cv-02379    Document 13    Filed 05/05/2008    Page 8 of 11

 Start **Saugatuck, MI**
End **Chicago, IL**
Travel **141 mi – about 2 hours 26 mins**



**Saugatuck, MI**

Drive: 141 mi – about 2 hours 26 mins

| | | |
|---|---|---|
| | 1. Head **south** on **Water St** toward **Mason St** | 0.1 mi |
| | 2. **Water St** turns slightly **left** and becomes **Culver St** | 0.2 mi / 1 min |
| | 3. Continue on **Lake St** | 0.3 mi |
| | 4. Turn **right** to stay on **Lake St** | 0.2 mi |
| | 5. Turn **right** at **Blue Star Hwy** | 1.9 mi / 4 mins |
| | 6. Take the ramp onto **I-196 S/US-31 S** | 36.1 mi / 31 mins |
| | 7. Take the exit onto **I-94 W/US-31 S** toward **Chicago/Niles** Continue to follow I-94 W Entering Indiana | 64.2 mi / 59 mins |
| | 8. Take exit **16** for **Ripley St/Toll Rd/IN-51 N** | 0.2 mi |
| | 9. Keep **right** at the fork, follow signs for **I-90 W/ Chicago Skyway/Indiana Toll Rd** and merge onto **I-90 W** Partial toll road Entering Illinois | 35.5 mi / 44 mins |
| | 10. Take exit **51H** toward **Chicago Loop/Congress Pkwy** | 0.7 mi / 1 min |
| | 11. Merge onto **Eisenhower Expy E/I-290 E** | 0.4 mi / 1 min |
| | 12. Take the **Wacker Dr** exit | 0.3 mi |
| | 13. Slight **right** at **S Upper Wacker Dr/S Wacker Dr** | 0.1 mi |
| | 14. Turn **right** at **W Jackson Blvd** | 0.2 mi / 1 min |
| | 15. Turn **left** at **S LaSalle St** | 0.4 mi / 2 mins |

**Chicago, IL**

**Overview**


**Start**


**End**


Map data ©2008 NAVTEQ™, Sanborn

These directions are for planning purposes only. You may find that construction projects, traffic, or other events may cause road conditions to differ from the map results.

Map data ©2008 NAVTEQ™, Sanborn



# BALI & INDONESIA ON TH

- Tourism Info: Bali & Indonesia
- All Hotels & Resorts in Bali
- International Hotels in Bali
- Jakarta Hotels
- International Hotels
- Bali for Family
- Travel8Ways.com: international hotels, flights, and tours by indo.com

Distance between **Saugatuck, Michigan, United States** and **Chicag United States**, as the crow flies:

**95 miles (152 km)** (82 nautical miles)

Initial heading from Saugatuck to Chicago:
**southwest (233.8 degrees)**
Initial heading from Chicago to Saugatuck:
**northeast (52.8 degrees)**

| Chicago Newspapers | Travel Distance |
|---|---|
| List of Newspapers in Chicago. Contact information, maps, & more. | Trusted Travel Distance Answers From Users. It's Free! |

See airfares between these two cities in Travel8Ways.com.
See hotels in these two cities in Hotels.Indo.Com or Travel8Ways.com
See driving distance and directions (courtesy Maps.com)

## Saugatuck, Michigan, US [hotels, attractions, books, community, map]

County: **Allegan County**
Location: **42:39:22N 86:12:21W**
Population (1990): **954**

## Chicago, Illinois, US [hotels, attractions, books, commu map]

County: **Cook County**
Location: **41:50:13N 87:41:06W**
Population (1990): **2783726**
Elevation: **596 feet**

You may try a new search.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

AZTEC ENERGY PARTNERS, INC.,

      Plaintiff,

v.                                          CIVIL NO. 1-8-cv-02379 (VMK)

SENSOR SWITCH, INC.,

      Defendant.

**Case Presently Pending:**

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

AZTEC ENERGY PARTNERS, INC.,

      Plaintiff,

v.                                          CIVIL NO. 3:07 CV 775 (AHN)

SENSOR SWITCH, INC.,

      Defendant.

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing REVISED MEMORANDUM OF LAW IN SUPPORT OF THE MOTION FOR PROTECTIVE ORDER has been served upon all parties by facsimile and by depositing a copy of same in Federal Express to:

Bradford S. Babbitt, Esq.
Christopher F. Girard, Esq.
Robinson & Cole, LLP
280 Trumbull Street
Hartford, CT  06103-3597

This 2d day of May, 2008.

                                                                         */s/ Mark A. Rogers*
                                                                         Mark A. Rogers